IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Raymond Hicks, #21824-018, ) | C/A No. 0:09-2785-CMC-PJG |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Mary Mitchell, Warden Edgefield Satellite Prison ) | |
| Camp, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

The plaintiff, Raymond Hicks ("Hicks"), a self-represented federal prisoner currently housed at the Satellite Prison Camp adjacent to FCI-Edgefield of the Federal Bureau of Prisons ("BOP"), filed this habeas corpus action pursuant to 42 U.S.C. § 2241. In his Petition, Hicks contends that he is eligible for twelve months of placement in a residential re-entry center ("RRC")[1] and that BOP's decision to the contrary violates the Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657 (2008). Further, Hicks alleges that BOP has erroneously calculated his sentence. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion to dismiss.[2] (Docket Entry 14.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (Docket Entry 15.) Hicks filed a response in opposition (Docket Entry

---

[1] The court notes that an RRC was formerly referred to as a "community corrections center" ("CCC").

[2] The respondent's motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The respondent presents matters outside the pleadings in support of her motion under Rule 12(b)(6); therefore, the court is treating the respondent's motion as one for summary judgment pursuant to Rule 56. See Fed. R. Civ. P. 12(d).

17), to which the respondent replied (Docket Entry 18). Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion should be granted.

## BACKGROUND

Hicks was arrested on March 25, 1997 in Hillsborough County, Florida on local drug and weapon charges. He was released on bond on March 29, 1997. The local charges were then *nolle prossed* in lieu of federal prosecution. Hicks was arrested on July 2, 1997 on federal methamphetamine charges and was released on bond that same day. Hicks was arrested on October 10, 1997 on a federal bond violation and has remained in custody since that date. On March 3, 1998, the United States District Court for the Middle District of Florida sentenced Hicks to seventy months' imprisonment for possession with intent to distribute methamphetamine. Thereafter, Hicks was transported to the United States District Court for the Southern District of West Virginia where on December 7, 1998, Hicks was sentenced to one hundred and eighty months' imprisonment for conspiracy to possess with intent to distribute marijuana. The district judge ordered this sentence to run concurrently with Hicks's current federal term.

BOP initially calculated Hicks's sentence as a straight one hundred and eighty month sentence commencing on March 3, 1998 with pre-sentence credit awarded from March 25, 1997 through July 2, 1997 and from October 10, 1997 through March 2, 1998. With that calculation, Hicks's anticipated release date with credit for anticipated good conduct time was July 27, 2010. (See Sentence Computation as of Mar. 16, 1999, Docket Entry 14-5.)

On August 8, 2007, Hicks was transferred to the Satellite Prison Camp adjacent to FCI-Edgefield, and BOP audited his sentence and reviewed Hicks for pre-release placement. As a result of the release audit, the Designation and Sentence Computation Center ("DSCC") determined

that Hicks's sentence was incorrectly calculated based on two errors. First, DSCC found that Hicks's computation failed to correctly account for "concurrent overlap" in his two sentences. BOP determined that Hicks's first sentence of seventy months' imprisonment commenced on March 3, 1997, the day that it was imposed. It further determined that Hicks's second sentence of one hundred eighty months' imprisonment was incorrectly computed as commencing on March 3, 1998, rather than on December 7, 1998—the date of imposition. Based on these changes, BOP recalculated Hicks's sentence to account for the overlap of nine months and four days and determined that Hicks should be serving an aggregate term of fifteen years, nine months, and four days.

Second, BOP found that there was an error in Hicks's prior custody credit. As stated above, the original sentence calculation included an award of pre-sentence credit from March 25, 1997 through July 2, 1997. However, Hicks was released on bond during a portion of that time; therefore, BOP determined that Hicks had received more pre-sentence credit than he was due. BOP determined that Hicks should be awarded pre-sentence credit from March 25, 1997 (date arrested on state charges) to March 29, 1997 (date released on state bond); the day of July 2, 1997 (date arrested and released on federal charges); and from October 10, 1997 (date arrested on bond violation) to March 2, 1998 (day before first federal sentence imposed) for a total of one hundred fifty-two days of pre-sentence credit. Accounting for these two changes, BOP determined that Hicks's new anticipated release date is June 27, 2011.

With regard to his pre-release review, Hicks's Unit Team considered him initially for community placement in early 2009 and recommended Hicks for four to five months of pre-release community placement. After Hicks's release date was changed, Hicks was advised that he would be considered for RRC placement at a later date and upon reconsideration, the Unit Team again recommended Hicks for four to five months of pre-release community placement.

# DISCUSSION

**A.     Rule 12(b)(1) Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

**B.     Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere

allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e).  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**C.     Habeas Corpus Generally**

Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of his custody.  See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  The sole remedy in federal court for a prisoner seeking restoration of good time credits or seeking to invalidate his disciplinary conviction is a writ of habeas corpus.  See Edwards v. Balisok, 520 U.S. 641 (1997); Preiser, 411 U.S. 475.  Moreover, a petition for habeas corpus under § 2241 is the proper method to challenge the computation or execution of a federal sentence.  See United States v. Little, 392 F.3d 671, 679 (4th Cir. 2004) (citing In re Vial, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (*en banc*)); United States v. Miller, 871 F.2d 488, 490 (4th Cir. 1989).

**D.     Sentence Calculation Claim**

The BOP has the authority to execute sentences and compute jail time, which includes computing pre-sentence credits and determining the sentence termination date.  United States v. Wilson, 503 U.S. 329, 333-35 (1992); 28 C.F.R. § 0.96.  According to 18 U.S.C. § 3585(a), "a sentence to a term of imprisonment commences on the date the defendant is received in custody

awaiting transportation to . . . the official detention facility at which the sentence is to be served."

Credit for prior custody is specifically addressed by 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> that has not been credited against another sentence.

As stated above, Hicks was sentenced to seventy months' imprisonment on March 3, 1998 in the United States District Court for the Middle District of Florida. He was then transported to the United States District Court for the Southern District of West Virginia where on December 7, 1998, Hicks was sentenced to one hundred and eighty months' imprisonment to run concurrently to his current federal term. Hicks's sole argument on this issue is that BOP incorrectly calculated his sentence by applying an incorrect commencement date for his seventy-month sentence. He asserts that he did not commence either sentence until after December 7, 1998. If both sentences commenced on December 7, 1998, they would be fully concurrent and, Hicks contends, the time he spent in custody from March 3, 1998 to December 6, 1998 would then be additional pre-sentence credit applied to his aggregate sentence, resulting in an earlier release date.

Relying on 18 U.S.C. § 3585(a), Hicks argues that because he was transported to the Southern District of West Virginia after he was sentenced in the United States District Court for the Middle District of Florida, he was not "awaiting transportation to . . . the official detention facility at which the sentence is to be served," and therefore, his seventy-month sentence could not commence. Hicks contends that Taylor v. Reno, 164 F.3d 440 (9th Cir. 1998), supports this argument based on its statement that a federal sentence does not commence when it is imposed.

The court disagrees. In Taylor, the defendant was in primary state custody when he was loaned to federal officials via a writ of habeas corpus *ad prosequendum* for sentencing in federal court. The United States Court of Appeals for the Ninth Circuit held that the state retained primary jurisdiction during this time and, contrary to statements made by the district court, the district court did not have authority to place the defendant into federal custody for purposes of commencing his federal sentence. The facts in this case differ from Taylor. Here, Hicks was in primary federal custody when the district court imposed a seventy-month sentence on March 3, 1998 and was remanded on that day to the custody of the United States Marshal. (Docket Entry 8-1 at 39.) While remaining in federal custody, Hicks was transported to West Virginia and was sentenced on additional federal charges. Under the facts of this case, BOP correctly determined that Hicks's seventy-month sentence commenced on March 3, 1998 and did not err in determining that from March 3, 1998 through December 7, 1998, Hicks was in federal custody awaiting transportation to the facility where he would ultimately serve his sentence. See Wilson, 503 U.S. 329, 333-35; Mitchell v. Story, 68 F.3d 483, 1995 WL 610879 (10th Cir. 1995) (Table) (affirming the district court's decision that reached the same conclusion under similar facts and circumstances); cf. United States v. Evans 159 F.3d 908, 911 (4th Cir. 1998) ("A federal sentence does not commence until the Attorney General receives the defendant into her "custody" for service of that sentence.").

Accordingly, Hicks has failed to demonstrate that BOP erred in determining that Hicks's properly calculated aggregate sentence is fifteen years, nine months, and four days. See, e.g., Shelvy v. Whitfield, 718 F.2d 441, 444 (D.C. Cir. 1983) ("[A] federal sentence made concurrent with a sentence already being served does not operate in a 'fully concurrent' manner. Rather, the second sentence runs together with *the remainder* of the one then being served.") (emphasis in original); 18 U.S.C. § 3584(c). The time that Hicks spent in custody from March 3, 1998 to December 6, 1998

has been applied towards that aggregate sentence, and therefore, BOP has awarded Hicks all the pre-sentence credit to which he is entitled. See § 3584(b); United States v. Wilson, 503 U.S. 329, 333 (1992) ("[T]he final clause of § 3585(b) allows a defendant to receive credit only for detention time 'that has not been credited against another sentence.' "). Accordingly, Hicks is not entitled to habeas relief.

**E.      Community Placement Claim**

Hicks alleges that he should have been recommended for twelve months of RRC placement rather than four to five months based on the requirements of the Second Chance Act.

    **1.      Subject Matter Jurisdiction**

The respondent first contends that with this claim Hicks is not challenging the fact or duration of his term; rather, his claim relates to the conditions of his confinement—i.e., the location. The court observes the United States Court of Appeals for the Fourth Circuit has not addressed this issue; however, persuasive authority from other circuits exists. Other circuits have held that a challenge to a BOP decision governing placement in an RRC is a proper challenge to the execution of the inmate's sentence and is therefore properly brought pursuant to § 2241. See Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006); Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 242-44 (3d Cir. 2005). These courts observed that confinement in a traditional federal prison is "qualitatively different" from community confinement, and thus justifies utilization of § 2241 for challenging BOP decisions regarding placement in an RRC. Woodall, 432 F.3d at 243-44; see also Levine, 455 F.3d at 78 (stating that the "petition challenges the place of his imprisonment, including the differences in the manner and conditions of imprisonment (such as the degree of physical restriction and rules governing prisoners' activities) that distinguish CCCs from other BOP penal facilities"). Based on this persuasive authority from other circuits, the court finds that this action challenging the length

of Hicks's RRC placement is properly brought as a habeas corpus action pursuant to 28 U.S.C. § 2241.

### 2. Community Placement Generally

Community placement is provided for by 18 U.S.C. § 3624(c)(1), which provides the following:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1) (as amended by the Second Chance Act of 2007, eff. Apr. 9, 2008). Designation of such placement is based upon consideration of the following five factors, as provided in the general statute regarding prison placement and transfers:

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence-
    (A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or
    (B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission . . . .

18 U.S.C. § 3621(b). Amendments by the Second Chance Act required BOP to issue new regulations to ensure that RRC assignments are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6). Both the interim rules adopted by BOP, see 28 C.F.R. §§ 570.20-.22, and the statute require BOP to determine "on an individual basis" how much time, if any, each federal prisoner should spend at an RRC. Further, they provide that the maximum amount of time that a prisoner can spend at an

RRC is not more than twelve months; however, there is no set minimum. See 28 C.F.R. § 570.21 ("Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months"). "Under these new regulations, an inmate presents a valid claim only if he is denied individual consideration based on the § 3621(b) factors." Specter v. Dir., Fed. Bureau of Prisons, C/A No. 4:09-191-TLW, 2010 WL 883733, *5 (D.S.C. Mar. 5, 2010) (unpublished) (citing Skrzypek v. Cruz, C/A No. 08-6111 ADM/SRN, 2009 WL 465053, *2 (D. Minn. Feb. 24, 2009) (unpublished)); Garrison v. Stanberry, No. 2:08cv522, 2009 WL 1160115, *4 (E.D. Va. Apr. 29, 2009) (unpublished) ("[T]he Court only has authority to review whether the BOP properly reviewed Petitioner's case on an individualized basis and followed § 3621(b)'s five factors.").

After the passage of the Second Chance Act, BOP issued a memorandum dated November 14, 2008, noting that prisoners are now eligible for up to twelve months in a halfway house. The November 14 memorandum also noted that a memorandum issued April 14, 2008—which stated that the Warden must obtain the Regional Director's approval for RRC placements of greater than six months because the BOP's "experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less"—remains in full effect. (Docket Entry 1-1 at 5, 12.)

### 3. Discussion

To the extent that Hicks alleges that the Act requires BOP to provide him with twelve months of community placement, this argument fails. While Hicks may be eligible for up to twelve months of community placement, there is no *requirement* for BOP to place Hicks in an RRC for any portion of his sentence. This decision is within BOP's discretion. See Miller v. Lappin, No. 7:09CV00012, 2009 WL 166873, *2 (W.D. Va. Jan. 26, 2009) (unpublished).

Hicks also alleges in his Petition that the April 14 and November 14 memoranda are inconsistent with the Second Chance Act and that the April 14 memorandum "impermissibly constrains staff's discretion to designate inmates to a CCC for a duration that will provide the greatest likelihood of successful reintegration into the community." (Am. Pet., Docket Entry 8 at 1-2.) He further alleges that the respondent abused her discretion in recommending his placement in an RRC for only four to five months.

The record includes a declaration from Valerie Wilkins, Hicks's case manager, explaining the process that was used in determining the proper RRC placement for Hicks. (Docket Entry 14-6.) Wilkins declares that the Unit Team considered his case and applied the five statutory factors listed in 18 U.S.C. § 3621(b). Wilkins stated that the Team "could not make a specific recommendation concerning a particular RRC facility, as [it] did not know which specific facilities might be available." However, the Team indicated that Hicks did not need drug treatment or other specific programs. Further, the Team found that Hicks has good work habits, has received good work evaluations, is active in religious programs, earned his general equivalency diploma ("GED") while incarcerated, and is on the waiting list for pre-release classes. Wilkins also declares that she believes that no more than a 150-day community placement is needed and observes that Hicks has already secured a residence upon release.[3]

In response in opposition to summary judgment, Hicks argues that since the Team could not make a specific recommendation on a particular RRC facility, this assessment fails to comply with

---

[3] Wilkins also observed that Hicks has a job secured upon release, which Hicks disputes in his response. In reply, the respondent has submitted a supplemental affidavit indicating that she questioned Hicks concerning his post-release employment and learned for the first time that his post-release employment status has changed. However, Wilkins indicated that this does not change her position based on the variety of marketable skills that Hicks indicated he possessed. (Wilkins Supp. Aff. ¶ 5-6, Docket Entry 18-3.)

§ 3621 as it fails to address this factor. Further, Hicks argues that Wilkins's declaration wholly fails to address the second factor or the third factor, so it is unclear whether these were considered. Hicks's speculation that second and thirds factors were not considered is insufficient, especially in light of Wilkins's declaration that all five factors were considered. Moreover, while Hicks may dispute the application of these factors in his case, there is no indication that Hicks was denied individual consideration based on the § 3621(b) factors. See Specter, 2010 WL 883733 at *5 ("Under these new regulations, an inmate presents a valid claim only if he is denied individual consideration based on the § 3621(b) factors."); Garrison, 2009 WL 1160115 at *5 ("[T]the Court lacks the authority to direct the BOP to consider specific characteristics for each prisoner who is reviewed for RRC placement; the Court is limited to asking whether the BOP used the five factors and cannot engage in a review of the substantive merits or thoroughness of the BOP's analysis."). Finally, there is no indication that the § 3621(b) factors are an exhaustive list preventing BOP from considering other information. See Levine, 455 F.3d at 86 ("We read the § 3621 factors as non-exclusive, and this certainly permits the BOP to consider [other information], but such an unlisted factor cannot unilaterally and categorically supplant the statutory list."); see also Rodriguez v. Smith, 541 F.3d 1180, 1187 (9th Cir. 2008) (indicating that others factors may be considered but that the five factors in § 3621(b) may not be ignored).

For the foregoing reasons, the court finds that BOP properly reviewed Hicks's case on an individual basis and Hicks cannot demonstrate that BOP failed to consider § 3621(b)'s five factors in recommending Hicks for four to five months of RRC placement. Further, there is no indication that Hicks was categorically granted less than six months of placement in an RRC. As Hicks was recommended for less than six months of RRC placement, there is no basis to infer that the challenged memoranda—which require the Warden to obtain the Regional Director's approval for

RRC placements of greater than six months because the BOP's "experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less"—factored into or constrained BOP's decision.[4]  Accordingly, Hicks is not entitled to habeas corpus relief.

## RECOMMENDATION

Based on the foregoing, the court recommends that the respondent's motion (Docket Entry 14) be granted and that Hicks's Petition be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 18, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[4] Even if Hicks could demonstrate that these memoranda impacted BOP's decision in this matter, many courts have held that these memoranda do not violate the Second Chance Act of 2007. See, e.g., Miller v. Whitehead, 527 F.3d 752, 756 (8th Cir. 2008) (holding that the requirement in the April 14th memorandum that "placement in an RRC for more than 180 days is 'highly unusual' and possible only with an 'extraordinary justification' " was not inconsistent with § 3621(b)); Taylor v. Jett, C/A No. 09-1632 (RHK/JJK), 2010 WL 502783, *3 (D. Minn. Feb. 5, 2010) (unpublished) (finding that the requirement of "unusual or extraordinary circumstances" for RRC placements longer than six (6) months complies with the requirements of the Second Chance Act); Garcia v. Sanders, C/A No. 09-4188-ODW (RNB), 2009 WL 2970384, *4 (C.D. Cal. Sept. 15, 2009) (unpublished) ("Nor, in the Court's view, does either [BOP] Memo evidence a BOP policy of not giving individualized consideration to RRC placement requests and/or denying all inmates any more than six months RRC placement."); but see Strong v. Schultz, 599 F. Supp. 2d 556 (D.N.J. 2009) (holding that the memoranda constrain the staff's discretion and are without support in the Second Chance Act and remanding for BOP to reconsider the petitioner's RRC placement without the limitations imposed by the memoranda).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).